Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2676 | **DATE** | 10/20/2003 |
| **CASE TITLE** | Sylvester Young vs. Jo Anne B. Barnhart, Commissioner | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment or remand is granted. Defendant's motion for summary judgment is denied. Judgment is entered in favor of Plaintiff Sylvester Young and against Defendant Jo Anne B. Barnhart, Commissioner of Social Security. The ALJ's decision is vacated, and this case is remanded to the Commissioner of Social Security.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | OCT 21 2003 | | |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | 20 |
| | Copy to judge/magistrate judge. | | | | |
| | RO | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYLVESTER YOUNG, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 03 C 2676 ) |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, | ) Judge Ruben Castillo ) ) ) |
| Defendant. | ) |

**DOCKETED**

## MEMORANDUM OPINION AND ORDER

OCT 2 1 2003

Presently before this Court are Plaintiff Sylvester Young's motion for summary judgment or remand, (R. 13-1), and Defendant Jo Anne Barnhart's motion for summary judgment, (R. 17-1). An Administrative Law Judge ("ALJ") concluded that Young was not disabled after finding that he retained a limited capacity for light work and that jobs that he could perform existed in significant numbers. The Appeals Council denied Young's request for review of the ALJ's decision, (*id.* at 4), and Young filed this appeal. 42 U.S.C. § 405(g).

For the reasons provided below, we vacate the SSA's decision, grant Plaintiff's motion for summary judgment and remand, (R. 13-1), and deny Defendant's motion for summary judgment, (R. 17-1).

## RELEVANT FACTS

Young was born on May 2, 1948. (R. 11, Admin. R. at 20.) Young completed high school and underwent some special training as an automotive technician. (*Id.* at 196.) Until 1998 Young worked first as a caster and then at a pallet company. (*Id.* at 19, 197.) These jobs

20

required him to lift forty to fifty pounds and included up to eight or ten hours of walking a day. (*Id.* at 19, 198.)

## I. Medical Evidence

In 1998 Young suffered an insect sting to his left eye, causing permanent left-eye blindness. When Dr. Daniel B. Jankins examined Young two years later, at the request of Disability Determination Services, Young complained about his left-eye blindness and non-radiating low back pain. One year later, Disability Determination Services requested a second medical examination, which was conducted by a different physician, Dr. Daryl J. Melzer. In 2002, Young sought medical care from Dr. Angela Campbell, at Cook County Hospital, for back pain and arthritis. Young has visited Dr. Campbell a total of four times. (*Id.* at 166-170)

When examined by Dr. Jankins on October 11, 2000, Young complained of non-radiating low back pain. Young stated that he can be on his feet for several hours, and that "if he had to, he could walk up to a mile." Dr. Jankins found that the back pain impaired Young's ability to lift over twenty to thirty pounds. A spinal x-ray revealed degenerative arthritis. Dr. Jankins diagnosed Young with left eye blindness, probable alcohol abuse and a history of non-radiating low back pain. (*Id.* at 150-153.)

Six months later, on April 19, 2001, Young was examined by Dr. Melzer. Young complained of weak knees, worsened back pain and hand problems. Young stated that his knees had been giving out for the past year after he slipped on ice in November 1998. Young asserted he can walk "less than a block," has trouble walking stairs and takes pain pills to alleviate the pain. Young reported that he has constant pain in his lower back, which worsens if he sits or stands for more than 15 consecutive minutes, and has occasional numbness in his left leg.

2

However, Dr. Melzer noted no warmth, tenderness or effusion of the knees, and he reported that Young was difficult to examine because Young has low thresholds of pain and is very protective of his knees. Dr. Melzer also noted that although Young's knees were bent at a 90 degree angle when sitting, Young could not move them past 50 degrees during the exam. Dr. Melzer found the results of strength testing incompatible with Young's ability to walk. An x-ray of the knees revealed no acute bony or joint abnormality. From the examination, Dr. Melzer concluded that Young may have a cartilaginous injury in his knees as well as low back pain, but that it is unclear how much difficulty the pain represents because "the claimant overtly displays dramatic pain behaviors." (*Id.* at 154-156.)

Young visited the emergency room of Cook County Hospital on December 31, 2001, requesting pain pills for his back and knees. (*Id.* at 17.) The reports indicated that everything was normal except a diagnosis of degenerative joint disease. (*Id.*) From February 2002 through August 2002, Young visited the ACHN/Fantus Health Center for back pain, arthritis and physical therapy. (*Id.*) Dr. Campbell saw Young every two to three months after February 2002 and diagnosed him with degenerative joint disease, chronic low back pain and left eye blindness. (*Id.* at 173.) She indicated Young had tenderness in the L4-5 region and decreased range of motion of the back, which was not likely to change. (*Id.*) According to Dr. Campbell, Young was taking Naproxen and Robaxin for his pain. The side effects from these drugs include upset stomach and drowsiness. (*Id.* at 174.)

From these symptoms, Dr. Campbell indicated that certain movement as well as heavy lifting and pulling may aggravate his condition. (*Id.* at 173.) She concluded that Young can rarely lift ten pounds, possibly walk a mile, sit one to two hours at a time, stand for one hour and

would require a job that permitted shifting from sitting, standing or walking at will. (*Id.* at 175.) Furthermore, Dr. Campbell stated that Young likely would be absent from work three to four days per month. (*Id.* at 176.)

## II. Hearing Testimony

Young testified at his hearing before the ALJ. He said that his condition has remained about the same over the past year. (*Id.* at 202.) He also said that he was only taking Tylenol for pain because he was out of medication. (*Id.* at 202.) Young claims that his disability limits his daily activities to emptying a small garbage can, watching television, lying on the couch and drinking forty ounces of beer a day at friends' houses. (*Id.* at 205-06.) Young further testified that he occasionally walks around the block and that he thought he could lift a gallon of milk, but cannot hold it too long. (*Id.* at 205, 208.)

A vocational expert also testified about whether Young could perform a job available in significant numbers in the national economy. The ALJ posed a series of three hypothetical scenarios, varying the claimant's work-level and injuries to determine whether there was past relevant work or other jobs which Young could perform. (*Id.* at 228-29.) Relying on information from the *Economic Statistics Quarterly*, the vocational expert testified that an individual limited to light work and occasional posturals with monocular vision could not perform Young's past work, but could perform any of 7,000 assembly jobs, 6,000 packaging jobs and 4,000 visual inspection jobs within the Chicago metropolitan area. (*Id.* at 228-30.) The vocational expert also testified that there are unlikely to be any jobs available for an individual limited to light work and occasional postural with monocular vision who would miss three to four days of work a month. (*Id.* at 231.)

## III. The ALJ's Decision

The ALJ determined that Young is not disabled within the meaning of the Social Security Act. In reaching this conclusion the ALJ performed the five-step analysis required by SSA regulations. (*Id.* at 16.) 20 C.F.R. § 416.920. The ALJ found that Young retains the residual functional capacity ("RFC") to perform light work, involving monocular vision due to left eye blindness, with occasional postural activities. (*Id.* at 19.) Assuming these limitations and considering Young's age, education and RFC, the ALJ determined that he is able to make a successful vocational adjustment to work that exists in significant numbers in the national economy. (*Id.* at 20.) According to the ALJ, such work includes assembly, packaging and visual inspection. (*Id.*)

In finding that Young can perform light work, the ALJ found Young "not totally credible" and did not give Dr. Campbell's opinion controlling weight. (*Id.* at 19, 21.) The ALJ listed no reasons for Young's adverse credibility finding. The ALJ, however, rejected three specific findings in Dr. Campbell's report: (1) Young could rarely lift ten pounds; (2) Young experienced side effects from his medication; and (3) Young would miss three to four days a month of work due to his pain. (*Id.* at 19.)

First, in discounting Dr. Campbell's conclusion that Young could rarely lift ten pounds, the ALJ pointed out that Young testified he could lift a gallon of milk without difficulty. Second, the ALJ found that Dr. Campbell's statements about Young's side effects from the medication were not supported by his testimony; not only did Young testify that he was not taking prescription medication at the trial, but Young did not testify about side effects and Dr. Campbell's progress notes did not indicate any complaints of side effects. Finally, the ALJ

5

found Dr. Campbell's opinion that Young's condition would cause him to miss work three to four days per month was not supported by any evidence, especially since the doctor had only seen Young three times that year. (*Id.*)

After disregarding those statements, the ALJ found that the lack of objective signs of knee problems, Dr. Campbell's statement that Young's knee condition was mild and the absence of evidence of an upper extremity impairment that would cause further restrictions suggested that Young's condition was not inconsistent with a wide range of light work. (*Id.*) Furthermore, the ALJ found that light work does not involve the kind of heavy lifting or pulling that Dr. Campbell indicated would aggravate Young's condition. (*Id.*)

Finally, the ALJ determined that Young retained the capacity to perform the exertional demands of light work with occasional posturals and monocular vision. The ALJ found that Young was 53 years old at the date of the hearing and, thus, was an individual closely approaching advanced age. However, Young was actually 54 years old; he was born on May 2, 1948 and his hearing was held on December 18, 2002. Based on the vocational expert's testimony, the ALJ found that Young could not perform past relevant work, but could work as an assembler, packer or visual inspector. Therefore, the ALJ concluded that considering Young's age, education, work experience, RFC and ability to adjust to other existing work in the national economy, Young is "not disabled" in the framework of the Medical-Vocational Rule 202.13. (*Id.* at 20.)

## LEGAL STANDARDS

The standard of review for an agency decision is deferential. *Golembiewski v. Barnhart*, 332 F.3d 912, 915 (7th Cir. 2003). If there are no errors of law, this Court will uphold the ALJ's

findings of fact if they are supported by substantial evidence. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

To receive disability benefits, a claimant must qualify as "disabled" as defined by the Social Security Act. An individual is considered disabled if he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 416(i). Social Security regulations provide a five-step process for determining whether a claimant is disabled. *See, e.g., Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992). This inquiry examines:

> (1) whether the claimant is presently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one of the Secretary's listed impairments; (4) whether the claimant can perform her past relevant work; and (5) whether the claimant is capable of performing any work within the economy.

*Id.* (citing 20 C.F.R. § 416.920). Young contends that the ALJ erred at step five by finding him capable of performing other work in the economy. Step five requires the ALJ to determine whether there are jobs in the national economy that accommodate a claimant's RFC and other vocational factors. *See* 20 C.F.R. § 416.920(a)(4)(v).

## ANALYSIS

Young presents four principal arguments supporting his claim for relief: (1) the ALJ's conclusion that Young can perform light work is not supported by substantial evidence because (a) the ALJ improperly weighed medical evidence and (b) the ALJ erroneously found Young not totally credible; (2) even if Young can perform light work, the vocational expert's testimony that there are jobs available in the national economy is not supported by substantial evidence; and (3)

the ALJ should have performed a borderline age analysis to determine if Young should have been classified as an individual of "advanced age."

## I. Light Work Determination

Young argues that substantial evidence does not support the ALJ's conclusion that Young can perform light work. Specifically, Young contends that the ALJ improperly discounted the opinion of Young's treating physician, Dr. Campbell, and that the evidence does not support the ALJ's finding that Young was not totally credible.

### A. Weighing the Medical Evidence

The ALJ declined to accord controlling weight to Dr. Campbell's report on the grounds that it conflicted with Young's own testimony about his daily activities and that it was unsupported by the medical evidence. A treating physician's determination that a claimant is disabled or can no longer work "is not conclusive on the ultimate issue of disability." *Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002). The Commissioner, rather than a treating physician, decides if a claimant is disabled. *See* 20 C.F.R. § 416.927(d)(2); *Clifford*, 227 F.3d at 870. Generally, an ALJ is obligated to accord controlling weight to the opinions of treating physicians about the nature and severity of medical conditions. *See* 20 C.F.R. § 416.927(d)(2); *Clifford*, 227 F.3d at 870. However, an ALJ may refuse to grant such controlling weight if the treating physician's opinion is unsupported by medical findings or inconsistent with other evidence in the record. *Id.* If the ALJ decides not to accord controlling weight to the treating physician's opinion, he must "minimally articulate his reasons for crediting or rejecting evidence of disability." *Id.*

8

The ALJ listed several reasons for giving less weight to Dr. Campbell's medical opinion. First, the ALJ determined that Dr. Campbell's finding that Young could rarely lift ten pounds was not supported by substantial evidence in the record. The ALJ contrasted Dr. Campbell's opinion with Young's own testimony that he could lift a gallon of milk. Although Young argues that a gallon of milk weighs only 8.62 pounds, we do not find this weight differential sufficient to hold that the ALJ's decision was not supported by substantial evidence. Furthermore, Dr. Melzer, an investigating physician, noted that Young was obstructing the determination of Young's true strength and that the demonstrated strength was incompatible with Young's ability to walk. From that information, the ALJ could properly conclude that Dr. Campbell's opinion was overly restrictive.

Second, the ALJ rejected Dr. Campbell's finding that Young experiences side effects from his medication. Young testified that he was not taking any medication at the time of the trial because it was too expensive, he did not mention that he experienced side effects from the medication and progress notes do not indicate complaints of side effects. Again, Dr. Campbell's report was inconsistent with the plaintiff's testimony and unsubstantiated by medical records. Thus, the ALJ's rejection of Dr. Campbell's finding is supported by substantial evidence.

Finally, the ALJ found Dr. Campbell's opinion that Young would miss three to four days of work per month unconfirmed by medical evidence. In reaching this conclusion, the ALJ pointed to the fact that Dr. Campbell had seen Young only three times throughout the year and her progress notes were devoid of any indication of serious impairments that would require additional days of incapacitation. The ALJ concluded that Young's limited activities are consistent with a wide range of light work. The ALJ noted that no physician, neither Dr.

9

Campbell nor those provided by the SSA, found objective signs of knee problems or evidence of an upper extremity impairment that could cause further restrictions.

The ALJ did not discount the opinion of a treating physician without explanation. The ALJ explained his decision by identifying conflicts between Young's testimony about his daily activities and Dr. Campbell's restrictive assessment of Young's abilities. The ALJ also noted the short length of the "treatment relationship," and the absence of medical evidence to support Dr. Campbell's determinations. Accordingly, under the deferential standard of substantial evidence review, we affirm the ALJ's decision to accord less weight to Dr. Campbell's medical opinion.

### B. Young's Credibility

Young asserts that the ALJ erroneously found him "not totally credible." Young correctly points out that the ALJ cannot make a mere conclusory statement regarding a claimant's credibility. Social Security Ruling 96-7p requires that an ALJ must provide "specific reasons" for his finding. SSR 96-7p. The ALJ's reasons must be "supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003) (quoting SSR 96-7p).

The ALJ simply concluded that "[t]he undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision." (R. 11, Admin. R. at 21.) However, the body of the decision contains no information about the ALJ's reasoning. This type of conclusory statement is prohibited by SSR 96-7p. The ALJ should have explained his credibility finding in the opinion, even if he thought the determination was obvious. However, remanding the credibility issue to the ALJ for elucidation

10

of his reasoning will not affect Young's RFC determination; the medical evidence alone is substantial evidence that Young is capable of performing light work. Therefore, we find the ALJ's failure to explain its credibility finding insufficient to reverse the ALJ's finding that Young is capable of performing light work.

## II. The Vocational Expert's Testimony

Step five of the disability analysis also requires the ALJ to assess whether a claimant's RFC permits him to work in the national economy. To assist in this analysis, a vocational expert testified at Young's administrative hearing. Young contends that the vocational expert's testimony does not constitute substantial evidence of his ability to work in the national economy because: (1) the hypothetical person did not adequately represent Young's functional limitations; and (2) the vocational expert relied on a research journal not readily available to the public.

The hypothetical question that an ALJ presents to a vocational expert "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994). The record establishes that the ALJ asked the vocational expert three sets of hypothetical questions, each containing various combinations of Young's impairments. The final hypothetical involved an individual limited to light work with occasional posturals and monocular vision. This hypothetical contained all of the limitations supported by medical evidence that comprise Young's RFC.

Young asserts that the ALJ erroneously omitted information that Young would be absent from work three to four days per month. However, the ALJ specifically rejected this finding, and this Court already found that his decision was supported by substantial evidence. Similarly, Dr. Campbell's other medical findings that the ALJ did not include in the hypothetical were also

11

rejected as unsubstantiated by the medical evidence. Accordingly, we find that the ALJ posed hypothetical questions that adequately represented Young's functional limitations.

The vocational expert also testified that Young could perform certain jobs available in the national economy. Young objects to the authority on which the vocational expert relied. Young insists that the vocational expert could not support his testimony with statistics from *Economic Statistics Quarterly*, a journal allegedly not readily available to the public. However, there is no constraint on the type of professional sources on which a vocational expert can rely. *See Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993) (upholding a vocational expert's reliance on statistical data from a quarterly journal not explicitly listed as an authority in the social security regulations because the purpose of experts is to provide information not already available through administrative or judicial notice). We will not reverse the ALJ's finding simply because the vocational expert relied on a journal not readily available to the public.

Furthermore, if a claimant disagrees with a vocational expert's findings, he may challenge the expert's figures with information from other publications during cross-examination. *Tom v. Heckler*, 779 F.2d 1250, 1255-56 (7th Cir. 1985). During the vocational expert's testimony, Young's attorney indicated that he was familiar with the journal, did not object to the use of such data and did not present contrary scholarly research. This Court concludes that the ALJ properly relied on the vocational expert's testimony. Thus, the ALJ's step five determination is supported by substantial evidence.

### III. Borderline Age Determination

Finally, Young requests that we review the ALJ's classification of Young as an individual "closely approaching advanced age." This determination is crucial to the classification of Young

as disabled or not disabled under the Medical-Vocational Guidelines of the Social Security Administration. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 (a claimant "closely approaching advanced age" classified as not disabled under Rule 202.13 is disabled at "advanced age" under Rule 202.04). Young complains not only that the ALJ misclassified him as an individual "closely approaching advanced age," but, more importantly, that the ALJ failed to even consider his borderline age.

A claimant's age is an important factor in determining his ability to adjust to new employment. 20 C.F.R. § 416.963. Under SSA regulations, the Commissioner "will not apply . . . age categories 'mechanically in a borderline situation.'" *Heckler v. Campbell*, 461 U.S. 458, 462 (1983). An ALJ should apply the borderline regulation when a claimant is within a few days to months of reaching an older category. 20 C.F.R. § 416.963.

Courts have not defined the maximum number of months within which a claimant is no longer entitled to a borderline analysis. A court in this district has concluded that the Commissioner should have performed a borderline assessment when the claimant was six months shy of his fiftieth birthday. *Freundt v. Massanari*, No. 00 C 4456, 2001 WL 1356146, at *18 (N.D. Ill. Nov. 2, 2001). The court in *Graham v. Massanari*, No. 00 C 4669, 2001 WL 527326, at *8 (N.D. Ill. May 9, 2001), held that a claimant four and one-half months short of his fiftieth birthday was entitled to a remand so the ALJ could consider whether he is an individual closely approaching advanced age. Finally, a claimant who was only two months past his fifty-fourth birthday at the time of the hearing, but six months past his fifty-fifth birthday by the time of the Appeals Council decision was entitled to a borderline age determination. *Tousignant v. Apfel*, No. 97 C 4150, 1998 WL 142415, at *5 (N.D. Ill. March 26, 1998).

13

Young was four and one-half months short of his fifty-fifth birthday on the date of his administrative hearing. He was born on May 2, 1948, and his hearing was held on December 18, 2002. The Appeals Council decision was issued on February 21, 2003. Mistakenly believing that Young was 53 years old at the hearing, the ALJ classified Young as an "individual closely approaching advanced age" without performing a borderline age analysis. Had the ALJ applied the next age category, thereby deeming Young an individual of "advanced age," Young would have been found to be disabled under Rule 202.04. While we do not instruct the ALJ to select a particular age category, we remand this case to the ALJ for a borderline age analysis as required in 20 C.F.R. § 416.963.

## CONCLUSION

For the reasons stated above, we grant Young's motion for summary judgment and remand, (R. 13-1), and deny Barnhart's motion for summary judgment, (R. 17-1). The ALJ's decision is vacated, and the case is remanded for a borderline age analysis. The Clerk of the Court is instructed, pursuant to Federal Rule of Civil Procedure 58, to enter judgment in favor of Plaintiff Sylvester Young and against Defendant Jo Anne Barnhart.

ENTERED: _____
Judge Ruben Castillo
United States District Court

Dated: October 20, 2003